## Peacock et al. *versus* Chambers et al.

The answer to a bill of complaint responsive to the matters complained of, is conclusive evidence in favor of defendants, there being no opposing testimony.

At NISI PRIUS. In Equity.
Motion for special injunction.
The following opinion was delivered by

READ, J.—I heard a motion for a special injunction in this case upon the bill filed, and affidavits on both sides; but believing it was the interest of both parties to have a speedy final hearing, I caused it to be so expedited that it was fully argued before me on the 6th inst., on bill, answer, replication, and proofs. The evidence consisted of the articles of association of the plaintiffs and defendants on the 8th February, 1860; under the name, style, and firm of Peacock, Chambers & Co., the commissions of James S. Chambers as navy agent for the port of Philadelphia of 20th April and 10th August, 1861, the minute book of the association, and of a notice from Mr. Alex-

ander Cummings, of the 12th November, 1862, to Messrs. Peacock, Chambers & Co.

The stock of the partnership was valued at fifty thousand dollars, and divided into fifty shares of one thousand dollars each. Each share was entitled to one vote, and a concurring majority of the whole number of shares or votes to be necessary for every decision, except in the cases wherein it was otherwise provided. Voting by proxy (the authority being in writing) allowed. The association was to continue for the full term of five years from the 1st of February, 1860.

The seventh article is in these words: " An editor shall be employed, from time to time, for a term of not more than five years at any one engagement, and at a salary of not more than two thousand dollars per annum; and also a publisher for a term of not more than five years at any one engagement, at a salary of not more than twelve hundred dollars per annum; each of whom must, during the term of his employment, be a proprietor."

A register was also to be duly appointed, and assistant editors, reporters, correspondents, news collectors, printers, agents, clerks, and other persons requisite and necessary for the due and proper conduct of the business of the association, to be employed from time to time, and for such term of time, and at such rate of compensation or salary, as shall be deemed proper or judicious by the editor and publisher, except in cases where they shall have been specially directed by a resolution of the proprietors.

The bill stated that the plaintiffs were the holders of twenty-seven shares, and the defendants of twenty-three shares, and that on the 8th February, 1860, James S. Chambers, one of the defendants, was elected the publisher of the daily and weekly paper conducted by the said co-partnership; but neither at the time of his employment, nor subsequently, was any term assigned to the duration of his employment, and that he continued holding said position at the will of the plaintiffs, until the 16th August, 1862, and during his employment as publisher aforesaid, he did not devote his skill, care, and attention to the said department, but in the month of April, A.D. 1861, accepted from the government of the United States the appointment to the office of navy agent of Philadelphia, and since that period the duties of the said office have occupied the time, care, skill, and attention of the said James S. Chambers, to the exclusion of the interests of said co-partnership, whereby the plaintiffs and their said business materially suffered.

That the association, on the 26th of August, 1862, taking into consideration the matter above mentioned, and that the true interests of the co-partnership imperatively required a

change in the head of the publishing department of said paper, at a regular meeting of the association held on that day, by a majority of votes, passed a resolution removing the said James S. Chambers, as publisher of said paper, and appointing one of the plaintiffs, Ferdinand L. Fetherston, in his stead.

The bill then states that the defendants will not permit the said Fetherston to act as publisher of said paper in place of said Chambers, and that his right so to act is denied by them. It further alleges that the continuance of said Chambers as publisher will result in the destruction of the paper, and that said Fetherston is in all respects qualified to act as publisher of said paper, and that his qualifications in this respect are not denied by the defendants, or any of them. That the defendants at times pretend that the said James S. Chambers is competent to act therein, and that the interests of said partnership do not suffer under his publication of the paper, and at other times they assert that the plaintiffs had not the right to pass said resolution of said 16th of August, 1862. Both of which pretences the plaintiffs deny.

There are six interrogatories founded on these allegations, and the prayer of the bill is that the defendants may be perpetually enjoined and restrained from denying to the said Fetherston the right to publish said paper, and from interfering with him, and from refusing to him access to said paper and property of said co-partnership, and from disobeying or interfering in any way with the resolution passed on the 16th day of August, A.D. 1862.

The three defendants, James S. Chambers, Alexander Cummings, and Thomas J. Williamson, have filed separate answers responsive to the bill, but containing other matters not material in the present decision.

It is conceded that James S. Chambers was elected the publisher and that he was removed by the resolution of the 16th August, 1862, if that was a legal and proper act, and Ferdinand L. Fetherston elected in his stead. The first question, then, is, was Mr. Chambers' employment at the will of the association, or was it for any term that had not expired at the time of the passage of the resolution?

The third interrogatory is in these words: " Whether, on the 8th day of February, A.D. 1860, or at any other, and what times, the said defendant, James S. Chambers, was not elected publisher of said daily paper, and whether at any time any term was assigned for the duration of his employment?" and the fourth interrogatory follows up with this question : " Whether said James S. Chambers has not continued in said position at the will of your orators, until the 16th day of August, A.D. 1862 ?"

[Peacock et al. v. Chambers et al.]

The defendant, Chambers, answers, that "on the 8th February, 1860, he was selected and chosen publisher of the said newspaper, and it was distinctly understood and agreed by and between all the parties to the said partnership, and by and between the said respondent and the said partners, that the term of five years was assigned between themselves, and agreed upon with him, for the term of his employment, and that he was not to be discharged from his said office and employment during the said term." And he further says, in answer to the first sentence of the fourth interrogatory, "If it is meant to imply that he held the office, subject at any time to be discharged therefrom, without notice, or previous complaint, without just cause, and at the mere whim and caprice of the complainants, the defendant answers the question in the negative." The answers of the two other defendants are substantially the same. The only evidence on this point is the first minute in the minute book of the first meeting of the association, on the 19th of March, 1860, stating, "The association went into an election for editor, publisher, register, and secretary, with the following result: publisher, James C. Chambers; editor, Gibson Peacock; register, F. Fetherston; secretary, Casper Souder, jun'r," and the statement in article 2, that the business to be conducted in the name, style, and firm of Peacock, Chambers & Co."

The mistake, if it be one, as to date, was mutual, and it is evident, from the second article, that Messrs. Peacock and Chambers were intended from the beginning to fill the two most important posts in the association.

Under these circumstances, according to the doctrine of equity, I must assume the answer of the defendants, which are responsive to the matter stated in the bill and interrogated above, to be conclusive evidence in their favor, there not being even the testimony of one opposing witness. The plaintiffs, therefore, fail on this point.

The next question is (it being proved that his employment was for a term of five years) whether the other allegations were sufficient to justify his removal. Mr. Chambers had held the office of navy agent from the 30th of April, 1861, to the 19th of August, 1862, a period of fifteen months and a half, apparently without complaint, and the minutes show that the dividend declared for the preceding six months, on the 22d of July, 1862, of twelve per cent., was double the dividend for the corresponding six months in 1861.

The reason assigned for the removal of Mr. Chambers in the preamble of the resolutions of the 16th August, that the performance of the duties of the important government office held by the present publisher of the "Bulletin" interferes with the

[Peacock et al. *v.* Chambers et al.]

performance of his duties as publisher, does not appear from an examination of the minutes to be the only one, I will not say the true one. There appears to have been a radical difference of opinion about the management of the paper, which culminated in the attempt to remove Mr. Chambers.

Now, I cannot say that the simple holding of this office disqualifies Mr. Chambers from continuing as publisher, and so the association appear to have thought until this difference of opinion occurred. He may perform all the duties of publisher to their fullest extent, and if so it is rather a matter for the government to inquire if his duties to them are performed to their satisfaction. The neglect of his duties as publisher, and that his continuance as such will result in the destruction of the paper, as alleged by the plaintiffs, are denied expressly by all the defendants in their answers, and they also all assert that Mr. Fetherston is entirely unqualified to fill that post.

I am, therefore, bound by the evidence to say, that, as there is not a single opposing witness on the part of the plaintiffs, they have entirely failed in making out any case, as stated in their bill, for the removal of Mr. Chambers for cause. I should have been glad if our rules of evidence had permitted all the parties to be examined *viva voce*, in open court, when the merits of the case would have been fully understood, and the decision might have been founded upon a clear view of the whole subject matter of the dispute. The written answer of a defendant gets only a portion of the truth, whilst the other mode would get the whole truth out of both plaintiff and defendant, in that species of examination which has been found to be the surest means of eliciting the real facts of a transaction.

The lease acquired by Mr. Cummings must be assigned to the partnership.

I have decided this cause on the evidence presented to me, and I cannot help expressing a hope that these difficulties may be amicably settled by the parties themselves, for it is evident, if these disputes are continued, the property and income of the association must be gradually deteriorated, if not destroyed by them.

　　　　　　　　　　　The bill is dismissed.